UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BART D. KIMBER,<br><br>                              Plaintiff,<br><br>v.<br><br>TRACY GRANT, et al.,<br><br>                              Defendants. | Case No.:  3:16-cv-01472-BEN-AGS<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS** |

On March 27, 2017, Defendants filed a Motion to Dismiss Plaintiff's Complaint. (Docket No. 41.)  On May 18, 2017, Plaintiff filed an untimely opposition to Defendants' motion.  (Docket No. 44.)  The Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.  For the reasons set forth below, Defendants' Motion is **GRANTED**.

## BACKGROUND[1]

From approximately 1999 to June 2006, Plaintiff Bart D. Kimber ("Kimber") was employed as a firefighter for the Camp Pendleton Fire Department at Fire Station 8 ("Station 8").  (Compl. ¶¶ 6, 9-10, 43.)  In May 2003, Defendant Tracy Grant ("Grant"),

---

[1] The following overview of facts are drawn from the allegations in Plaintiff's Complaint. (Docket No. 1.)  The Court is not making findings of fact.

who at that time was a probationary female firefighter, was assigned to Station 8.  (*Id.* ¶ 12.)  Sometime "late on a work night" in June 2003, Grant made "unsolicited, unexpected, and unwelcome" sexual advances toward Kimber, which he did not reciprocate and ultimately declined.  (*Id.* ¶¶ 13-14.)  The day after this encounter, Kimber alleges Grant and Defendant Fire Captain Dean King ("King") began creating a hostile work environment for him.  (*Id.* ¶¶ 15-17.)

On September 23, 2003, Kimber submitted his first written request to be transferred to a different fire station, which was "ignored" by his supervisor, Defendant Fire Chief Richard Kazits ("Kazits").  (*Id.* ¶ 24.)  On October 31, 2003, King emailed Kazits to advise that the "EEO had recommended" that Kimber be separated from Grant and to conduct sensitivity training to avoid a formal complaint.  (*Id.* ¶ 25.)

On November 26, 2003, Grant met privately with Defendant Fire Chief Timothy Hoover ("Hoover") and two of his Assistant Fire Chiefs.  (*Id.* ¶ 26.)  Sometime after Grant's meeting, the Assistant Fire Chiefs went to Station 8 and "rude[ly] and aggressive[ly] advised Kimber that "they had put [Kimber] under an unspecified investigation."  (*Id.* ¶ 27.)  When Kimber asked for clarification, they put their palms in Kimber's face and told him to go through his chain of command.  (*Id.*)

On December 4, 2003, Kimber hand delivered his fifth transfer request to Hoover, which Hoover verbally denied.[2]  (*Id.* ¶¶ 29-30.)  On the same day, after Kimber had returned to Station 8, Kimber complained to King about Grant being on her cell phone in the sleeping area.  (*Id.* ¶¶ 31-32.)  Grant went to Fire Station 7 ("Station 7") to speak with Kazits, during which King also communicated with Kazits by phone.  (*Id.* ¶ 33.)  King advised Kimber not to communicate with Grant in any way when she returned.  (*Id.*)

Grant returned around 8:00 p.m. that same evening and at approximately 1:00, 1:30, and 2:00 a.m., she received cell phone calls that woke Kimber from his slumber.

---

[2] The Complaint does not include facts regarding Kimber's second, third, and fourth transfer requests.

(*Id.* ¶¶ 33-34.)  Kimber did not say anything to Grant about the calls, and in the morning some of his fellow crew members informed him that they observed an audio monitor in his room.  (*Id.* ¶ 35.)  Plaintiff alleges Grant, King, and "management" engaged in a "micro-phoning conspiracy" to entrap him into disregarding King's order not to communicate with Grant.[3]  (*Id.* ¶¶ 33-38.)

On December 7, 2003, Grant was transferred to another fire station.  (*Id.* ¶ 38.) Within two days of the recording incident, Kimber sought medical help from his family physician, who prescribed sedatives; within ten days, he sought psychological counseling.  (*Id.* ¶¶ 44-45.)  He eventually sought treatment for "stress-related illnesses causing the 'extreme anxiety, vertigo, shortness of breath, fatigue, rumination, . . . and a general mistrust for all."  (*Id.* ¶ 45.)  The Department of Labor acknowledges that Kimber "suffered work induced psychiatric conditions of prolonged depressive reaction and major depression with psychotic features" since December 2003.  (*Id.* ¶ 40.)

On or about July 20, 2004, Kimber "became incapable of continuing to function as a firefighter from the extreme stressors and psychological anxiety the micro-phoning had inflicted on his psyche."  (*Id.* ¶ 42.)  In June 2006, Kimber alleges the agency wrongfully terminated him.  (*Id.* ¶ 43.)

On June 14, 2016, Kimber filed this action against Defendants (the United States of America and ten individual federal employees or officers), containing twelve claims for relief related to his allegations of invasion of privacy, wrongful termination, employment discrimination, Civil Rights violations, negligent infliction of emotional distress, "reverse sexual discrimination," and Americans with Disabilities Act ("ADA") violations.  In short, Plaintiff generally alleges that all of the Defendants acted in some way to conspire to invade his privacy, engage in employment discrimination, violate his Civil Rights, and violate the ADA, resulting in his wrongful termination and ongoing

---

[3] These allegations are hereinafter referred to as "the recording incident."

emotional distress.  Defendants move to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

### A.    Rule 12(b)(1) [4]

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction.  The party opposing a motion to dismiss brought under Rule 12(b)(1) bears the burden of proving that the case is properly in federal court.  *See In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001) ("The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court.") (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).  Dismissal is appropriate if the complaint, considered in its entirety, on its face fails to allege facts that are sufficient to establish subject matter jurisdiction.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 985 (9th Cir. 2008) (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990)).

 "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted in original)).  In a facial attack, the moving party contends that the complaint's allegations are insufficient on their face to invoke federal jurisdiction.  *Id.*  In contrast, the moving party in a factual attack disputes the truth of the allegations that, by themselves, would otherwise establish federal jurisdiction.  *Id.*  A district court considering a factual attack need not presume the truthfulness of a plaintiff's allegations, *id.* (citing *White*, 227 F.3d at 1242), and may review evidence beyond the complaint without converting the motion into a motion for summary

///

---

[4] Unless otherwise stated, all future references to Rules in this Order are to the Federal Rules of Civil Procedure.

judgment. *Id.* (citing *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).

When the government invokes its sovereign immunity in a Rule 12(b)(1) motion to dismiss, a district court must examine whether it has subject matter jurisdiction. *Singh v. United States*, No. 16-CV-01919 NC, 2017 WL 635476, at *2 (N.D. Cal. Feb. 16, 2017) ("Whether the government waived sovereign immunity is a question of the Court's subject matter jurisdiction.") (citing *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995)). Because Defendants rely on extrinsic evidence to support their motion to dismiss claims against Defendant United States of America (hereinafter "the government"), the Court treats their motion as a factual 12(b)(1) attack and considers all admissible evidence in the record. *Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071, 1074 (D. Nev. 2011) ("Attacks on jurisdiction pursuant to Rule 12(b)(1) can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint.") (citing *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).

**B.    Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556–57 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully"). Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly,* 550 U.S. at 556. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of

5

a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The Court must assume the truth of the facts presented in a plaintiff's complaint and construe inferences from them in the light most favorable to the nonmoving party when reviewing a motion to dismiss under Rule 12(b)(6). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The complaint is considered in its entirety, "as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## C.    Defendants' Request for Judicial Notice

Defendants attached nine exhibits in support of their motion to dismiss (Docket No. 41-2, Defs.' RJN Exs. 1-9), which they assert are judicially noticeable pursuant to Rule 201 of the Federal Rules of Evidence. The nine documents, to which Kimber did not object, appear to be copies of final decisions in administrative proceedings before the Department of the Navy, Equal Employment Opportunity Commission, or the Merit Systems Protection Board relating to Kimber's discrimination, reprisal, and wrongful termination claims.

These documents appear to directly pertain to the matters at issue, and Kimber's Complaint refers to their existence by alleging he exhausted all of his administrative remedies. (Compl. ¶ 46.) Accordingly, the Court shall take judicial notice of each of Defendants' exhibits. *See* Fed. R. Evid. 201; *Daughtery v. Wilson*, No. 08CV408-WQH-BLM, 2009 WL 2579670, at *10 (S.D. Cal. Aug. 18, 2009) ("Generally, courts 'will not consider facts outside the record developed before the district court.' . . . However, courts 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'") (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992)); *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F.

Supp. 3d 1328, 1349 (C.D. Cal. 2014) ("courts can consider documents that are referenced in the complaint under the 'incorporation by reference doctrine.'") (citing *In re Stac Elec. Sec. Litig.,* 89 F.3d 1399, 1405 n.4 (9th Cir. 1996)).

## DISCUSSION

### A.    Kimber's Opposition to Defendants' Motion to Dismiss

As an initial matter, the Court shall address the documents Kimber filed in response to Defendants' Motion to Dismiss. (Docket No. 44.) Kimber's opposition was due on May 8, 2017. On May 18, 2017, Kimber attempted to simultaneously file:

1) a "Motion to Reconsider Amended Complaint [sic]" (*id.* at pp. 1-10)[5];

2) a "Motion to Concede and Correct Violations of Title 18 USC 2071(a)(b) [sic]" (*id.* at pp. 11-12);

3) a "February 06, 2017 Response to Opposition [sic]" (*id.* at pp. 12-14); and

4) "May 17, 2017 Motions to Clarify, Reschedule, Appoint Counsel/May 17, 2017 Motions to Clarify and Reschedule [sic]" (*id.* at pp. 15-21).

Construing these documents liberally, it appears to the Court that Kimber attempted to file a motion for reconsideration of the Court's denial of his motions to amend and for appointment of attorney (Docket No. 40), a motion to reschedule the hearing on the motion to dismiss, and his opposition to the motion to dismiss.

First, the motion to reschedule the hearing was rendered moot when the Court submitted the motion. (Docket No. 42.) Second, the Court previously denied Kimber's motions to amend and for appointment of counsel on March 6, 2017. (Docket No. 40.) Any motion for reconsideration was due on April 3, 2017. *See* CivLR 7.1.i.2 ("Except as may be allowed under Rules 59 and 60 of the Federal Rules of Civil Procedure, any motion or application for reconsideration must be filed within twenty-eight (28) days after the entry of the ruling, order or judgment sought to be reconsidered."). After

---

[5] All page number references to the parties' moving papers in this Order refer to the page numbers generated by the CM/ECF system.

reviewing Kimber's motion, the Court denies Kimber's motion for reconsideration as untimely and because the Court finds the reasoning in its prior Order sound.

Finally, although Kimber's opposition[6] was not timely filed, the Court nevertheless shall consider it in its analysis of Defendant's motion to dismiss.

## B. Defendants' Motion to Dismiss

Kimber's claims arise out of alleged conduct that occurred over ten years prior to the filing of his Complaint. For this reason, Defendants argue that nearly all of Kimber's claims are time-barred because either the deadlines to seek judicial review or the applicable statute of limitations period expired years before. Defendants further assert that this Court lacks jurisdiction to hear Kimber's claims against the government, and that Kimber's complaint lacks any cognizable claim for relief. The Court discusses each of the claims in turn.

### 1. First, Second, Third, and Fifth Claims for Relief

Kimber's First Claim for Relief is brought pursuant to 42 U.S.C. § 1985. (Compl. ¶¶ 59-75.) His Second and Fifth Claims for Relief are brought pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 76-91, 123-138.) His Third Claim for Relief is brought pursuant to 42 U.S.C. § 1981. (*Id.* ¶¶ 92-106.)

None of these statutes contain its own statute of limitations. Without a federal limitations period, federal district courts apply the forum state's statute of limitations for analogous claims, except to the extent these laws are inconsistent with federal law. *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) (forum state's statute of limitations for personal injury applied to Section 1983 claim) (citations omitted).

Here, Kimber's claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 are governed by California's statute of limitations for personal injury actions. *See Taylor v.*

---

[6] The Court construes Kimber's opposition as Docket No. 44 at pages 11-14.

*Regents of Univ. of Cal.*, 993 F.2d 710, 711–12 (9th Cir. 1993) (citing *Wilson v. Garcia,* 471 U.S. 261, 275 (1985) (state personal injury limitation statute governs § 1983 claims); *Del Percio v. Thornsley,* 877 F.2d 785, 786 (9th Cir. 1989) (same); *McDougal v. Cnty. of Imperial,* 942 F.2d 668, 672–74 (9th Cir. 1991) (state personal injury statute governs §§ 1981 and 1985 claims)).  In California, the statute of limitations for personal injury claims is two years.  *Butler*, 766 F.3d at 1198 (citing Cal. Civ. P. Code § 335.1).  As a result, the statute of limitations for these claims has long expired.  Therefore Defendants' motion to dismiss these claims is **GRANTED**.

### 2. Fourth Claim for Relief

The Fourth Claim for Relief is brought pursuant to 18 U.S.C. § 2511 (Compl. ¶¶ 107-122), which "makes it a violation for anyone to intentionally intercept, endeavor to intercept, or procure any other person to intercept any electronic communication." *DISH Network L.L.C. v. Vicxon Corp.*, 923 F. Supp. 2d 1259, 1268 (S.D. Cal. 2013) (citing 18 U.S.C. § 2511(a)).  "Section 2520 provides plaintiffs whose electronic communications are intercepted in violation of § 2511 with a civil action for damages." *Id.* at 1268 (citing 18 U.S.C. § 2520(a)).  "The statute specifically provides that 'a civil action under this section may not be commenced later than *two years* after the date upon which the claimant first has a reasonable opportunity to discover the violation.'" *Id.* at 1268 (citing 18 U.S.C. § 2520(e)) (emphasis added).  Here, Kimber's complaint alleges he discovered the alleged violative conduct on or about December 5, 2003 or December 7, 2003.  (Compl. ¶¶ 29-38.)  In effect, the latest date for him to have filed this claim December 7, 2005, which he failed to do.  18 U.S.C. § 2520(e).  Accordingly, the Court **GRANTS** Defendants motion to dismiss this claim.

### 5. Sixth Claim for Relief

Kimber's Sixth Claim for Relief is brought pursuant to California Penal Code Section 632.  (Compl. ¶¶ 139-154.)  Section 632 "prohibits intentional recording of confidential communications without the consent of all parties." *Akopian v. VW Credit, Inc.*, No. 2:12-CV-8679-SVW-RZ, 2013 WL 12123231, at *2 (C.D. Cal. Feb. 28, 2013)

(citing Cal. Pen. Code § 632). The statute of limitations for a claim under this statute is one year. *Id.* at *2 (citing *Cashcall, Inc. v. Sup. Court*, 71 Cal. Rptr. 3d 441, 455 (Cal. Ct. App. 2008)). Again, the time to bring this claim expired several years prior to Kimber's filing of the instant action. Defendant's motion to dismiss this claim is **GRANTED**.

### 6. Seventh and Eighth Claims for Relief

The Seventh and Eight Claims for Relief are for intentional and negligent infliction of emotional distress, respectively (hereinafter referred to collectively as "emotional distress claims"). (Compl. ¶¶ 155-192.) When a plaintiff sues the government or its employees in their official capacity for tort damages, he or she is required to comply with the requirements of the Federal Torts Claim Act ("FTCA").[7] The FTCA requires such a plaintiff to first exhaust his or her administrative remedies, which is set forth in 28 U.S.C. 2401(b).[8] *McNeil v. United States*, 508 U.S. 106, 107-09 (1993).

---

[7] 28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

[8] Title 28 U.S.C. § 2401(b) provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal

Thus, Kimber was first required to present his claims to the government within two years of his claims accrual; if his claim was denied, he had six months following receipt of the denial to file his lawsuit. 28 U.S.C. 2401(b). Kimber's Complaint is devoid of any allegations that he met either of these criteria. However, even if the Court assumes the truth of Kimber's general conclusory allegation that he exhausted all administrative remedies (Compl. ¶ 46), it is reasonable to infer that the time has long since passed for Kimber to have filed a lawsuit for these claims against the government.

As to Kimber's emotional distress claims against the individual defendants sued in their individual capacity, the statute of limitations is one year from the date he learned the "essential" facts to support his claim. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 586 (9th Cir. 1993) (finding plaintiff's emotional distress claims were barred by the California statute of limitations, "which requires an action for emotional distress to be brought within one year of the time the plaintiff knew of the facts essential to the cause of action.") (citing Cal. Civ. Proc. Code § 340(3)). Kimber alleges that on or about July 20, 2004, he "became incapable of continuing to function as a firefighter from the extreme stressors and psychological anxiety the micro-phoning had inflicted on his psyche." (Compl. ¶ 43.) Thus, he had until July 20, 2005 to file his emotional distress claims, but failed to do so. Accordingly, Defendants' motion to dismiss these claims is **GRANTED**.

7. Ninth Claim for Relief

Kimber's Ninth Claim for Relief is for "reverse gender discrimination." (Compl. ¶¶ 193-210.) Although he did not identify the statutory basis for this claim, the Court construes the allegations as asserting a claim under Title VII of the Civil Rights Act of 1964 ("Title 7") because Title VII provides the sole remedy for federal employees

---

agency within two years after such claim accrues or unless
action is begun within six months after the date of mailing, by
certified or registered mail, of notice of final denial of the claim
by the agency to which it was presented.

challenging workplace discrimination. *Holly v. Jewell*, 196 F. Supp. 3d 1079, 1083 (N.D. Cal. 2016) (discussing effect of Congress's 1972 amendment in light of the Supreme Court's decision in *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)).

A plaintiff litigating a Title VII claim in a federal district court is required to exhaust his or her administrative remedies. *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995) (citing *Brown,* 425 U.S. at 832 (1976)). This includes regulatory and judicially imposed exhaustion requirements. *Id.* Generally, a Title VII complainant must first file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged violation. 29 C.F.R. § 1601.13(a)(1). "If the EEOC does not bring suit based on the charge, the EEOC must 'notify the person aggrieved' that she can file suit." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (citing 42 U.S.C. § 2000e–5(f)(1)). This notice is usually given in the form of a "right-to-sue letter"; "once a person receives an EEOC right-to-sue letter, she has 90 days to file suit." *Id.*

Here, it appears Kimber has lodged complaints with the EEOC on three separate occasions (generating three right-to-sue letters) that encompass the majority of the allegations in the Complaint.[9] First, on January 14, 2008, the EEOC advised Kimber that it had reviewed his appeal from the Department of the Navy's ("Agency's") final decision regarding his "equal employment opportunity (EEO) complaint alleging employment discrimination" under Title VII, and affirmed the Agency's final decision. (Defs.' RJN Ex. 2 at p. 20.) The EEOC's letter acknowledged that Kimber's April 29, 2004 complaint alleged he had suffered gender discrimination when:

///

///

---

[9] Although Kimber alleges he exhausted all of his administrative remedies, he did not attach any right-to-sue letters to his Complaint, nor did he object to the Defendants' Request for Judicial Notice of purported copies of his complaints and right-to-sue letters from the EEOC.

(1) (a) he was issued a letter placing him on administrative leave, and
 (b) on April 30, 2004, he was suspended for seven days from May 16 to 22, 2004;
(2) on September 11, 21, 23, and December 4, 2003, his request to be transferred out of his assigned fire station were denied;
(3) on December 4, 2003, he was told not to communicate with a female Firefighter, who was allowed to place a baby monitor in her sleeping area to see if [Kimber] violated the instruction; and
(4) on May 12, and in June 2004, his request for 'Driver Operator Mobile Water Supply' Training (which was required for promotion to Engineer) was denied.

(*Id.* at pp. 20-21.)  The January 14, 2008 letter further advised Kimber "ha[d] the right to file a civil action in an appropriate United States District Court within **ninety (90) calendar days**" of receipt of the letter.  (*Id.* at p. 24) (emphasis in original.)

Kimber applied for reconsideration, and on April 7, 2008, the EEOC sent him a letter advising that "[a]fter reconsidering the previous decision and the entire record" it determined reconsideration was not warranted, and the decision in the January 14, 2008 letter remained the EEOC's final decision.  (Defs.' RJN Ex. 3 at p. 28.)  It further advised Kimber that "[t]here is no further right of administrative appeal" for this decision, and he "ha[d] the right to file a civil action in an appropriate United States District Court within **ninety (90) calendar days**" of receipt of the April 7, 2008 letter.  (*Id.*) (emphasis in original.)

Second, on September 5, 2007, the EEOC sent a letter to Kimber regarding his appeal from the final decision of Merit Systems Protection Board ("MSPB") "concerning his claim of discrimination in violation of Section 501 of the Rehabilitation Act of 1973." (Defs.' RJN Ex. 6 at p. 73.)  Kimber's claim "alleged that he was discriminated against on the basis of disability (Post Traumatic Stress Disorder)" and reprisal (referring to his previously filed Title VII complaints) when he was removed from his position on May 17, 2006.  (*Id.*)  The EEOC concurred with the MSPB's finding of no discrimination, specifically finding that "the MSPB's decision constitutes a correct interpretation of the laws, rules, regulations, and policies governing this matter and is supported by the

evidence in the record as a whole." (*Id.* at p. 74.) The September 5, 2007 letter advised Kimber that he "ha[d] the right to file a civil action in an appropriate United States District Court within **thirty (30) calendar days**" of receipt of the letter. (*Id.*) (emphasis in original.)

Third, on May 20, 2011, the EEOC issued a letter to Kimber regarding his appeal to the Department of the Navy's ("Agency's") final decision "dismissing a formal complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 . . . and Section 501 of the Rehabilitation Act of 1973[.]" (Defs.' RJN Ex. 8.) The letter summarized that although Kimber's formal complaint "lack[ed] lucidity, the Agency fairly construed the complaint as alleging two claims:

> 1. On November 24, 2010, [Kimber] became aware his 2005 EEO claim was not handled properly, based on a response received from Marine Corps Inspector General Office; and
> 2. on September 23, 2010, he became aware his 2005 Department of Labor claim was not handled properly.

(*Id.* at pp. 83-84.)

The EEOC found Claim 1 "is an elaboration of a matter raised in a prior EEO complaint, adjudicated by the Commission," referring to the EEOC's final decision and denial of reconsideration in the January 14, 2008 and April 7, 2008 right-to-sue letters.[10] (*Id.* at p. 84.) It also found Claim 2 "appear[ed] to address the alleged improper processing of an [Office of Workers' Compensation] claim," specifically identifying the complaint's "repeated reference to improper processing of CA-2 forms by Agency officials, refusal to process a 'legally submitted CA-2,' and other similar such descriptions." (*Id.*) After explaining that an employee may not use the EEO complaint to lodge a collateral attack on another proceeding (i.e. Department of Labor's Office of Workers' Compensation claims), the EEOC affirmed the Agency's dismissals of both

---

[10] Defs.' RJN Exs. 2, 3

claims.  (*Id.*)  It further advised Kimber that he "ha[d] the right to file a civil action in an appropriate United States District Court within **ninety (90) calendar days**" of receipt of the May 20, 2011 letter.  (*Id.* at p. 85) (emphasis in original.)

Kimber applied for reconsideration of this decision, and on October 5, 2012, the EEOC issued a letter denying his request for reconsideration "[a]fter reviewing the previous decision and the entire record."  (Defs.' RJN Ex. 9 at p. 89.)  It further advised Kimber that "[t]here is no further right of administrative appeal" for this decision, and he "ha[d] the right to file a civil action in an appropriate United States District Court within **ninety (90) calendar days**" of receipt of the October 5, 2012 letter.  (*Id.*) (emphasis in original.)

In sum, although it appears Kimber exhausted his administrative remedies for his Title VII claim, the judicially noticed documents provided by Defendants (which Kimber did not object to) indicate Kimber's time to bring a lawsuit for this claim has long since passed.  Therefore, Defendants' motion to dismiss this claim is **GRANTED**.

8.    Tenth Claim for Relief

Kimber's Tenth Claim for Relief is for "Obstruction by Destruction of Evidence" pursuant to 18 U.S.C. § 1512.  (Compl. ¶¶ 211-223.)  18 U.S.C. § 1512 is a criminal statute that punishes witness tampering.  Generally, the Supreme Court "has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of some sort lay in favor of someone.'"  *Ou-Young v. Vasquez,* No. 12-CV-02789-LHK, 2012 WL 5471164, at *5 (N.D. Cal. Nov. 9, 2012) (quoting *Chrysler Corp. v. Brown,* 441 U.S. 281, 316 (1979); *Cort v. Ash,* 422 U.S. 66, 79 (1975)).

Although the Court has not found, and Kimber did not provide, any binding authority to suggest there is a private right of action for this claim, other courts have concluded that no private right of action exists under 18 U.S.C. § 1512.  *Ou-Young*, 2012 WL 5471164, at *5 (citing *Shahin v. Darling,* 606 F. Supp. 2d 525, 538-39 (D. Del. 2009) aff'd, 350 F. App'x 605 (3d Cir. 2009) (no private right of action under § 1512;

citing cases); *Rockefeller v. U.S. Court of Appeals Office for Tenth Circuit Judges,* 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (dismissing claims brought pursuant to 18 U.S.C. §§ 242, 371 "because, as criminal statutes, they do not convey a private right of action")). As a result, Plaintiff has not and cannot state a claim for relief, and the Court **GRANTS** Defendants' motion to dismiss this claim.

      9.    <u>Eleventh Claim for Relief</u>

      Kimber's Eleventh Claim for Relief is for "Prohibited Personnel Practice (PPP) violations 5 U.S.C. § 2302(b)(8)(A)(B),(b)(9) [sic]." (Compl. ¶¶ 224-260.) Therefore, this claim is governed by the Civil Service Reform Act ("CSRA"), which provides for a remedial scheme whereby federal employees "can challenge their supervisors' 'prohibited personnel practices.'" *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) (quoting *Orsay v. U.S. Dep't of Justice,* 289 F.3d 1125, 1128 (9th Cir. 2002) (quoting 5 U.S.C. § 2302)) (internal quotation marks omitted). However, there is also no private right of action for a claim under 5 U.S.C. § 2302. *See Canas v. Raytheon Tech. Servs. Co., LLC*, No. EDCV 10-1432-R, 2013 WL 12137760, at *3 (C.D. Cal. June 11, 2013) (citing *United States v. Fausto,* 484 U.S. 439 (1988)); *see also Mangano*, 529 F.3d at 1246 ("The CSRA's remedial scheme is both exclusive and preemptive."). Thus, Kimber again has not and cannot state a claim for relief, and the Court **GRANT** Defendants' motion to dismiss this claim.

      10.    <u>Twelfth Claim for Relief</u>

      Lastly, the Twelfth Claim for Relief is for wrongful termination in violation of the "American Disabilities Act [sic]" and the "Re-Habilitation Act of 1973." (Compl. ¶¶ 261-278.) First, similar to a Title VII claim, "[b]efore filing an ADA suit, a plaintiff must timely file a discrimination charge with the EEOC." *Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 823 n.12 (9th Cir. 2001) (citing 42 U.S.C. § 12117(a)). "Filing a timely charge is a statutory condition that must be satisfied before filing suit in federal court." *Id.* (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)). This claim is based on the same facts as his Title VII claim. (Compl. ¶ 261) (re-alleging

the same factual basis underlying all of the claims in the Complaint.) As such, the Court incorporates by reference its Title VII analysis as it relates to Kimber's charges of discrimination based on disability to the EEOC, and finds Kimber's ADA claim is time-barred.

Second, "[t]he statute of limitations for the Rehabilitation Act Section 504 claim is provided by the analogous state law." *Douglas*, 271 F.3d at 823 n.11 (9th Cir. 2001). As noted above, in California, the statute of limitations for a personal injury claim is two years. Cal. Civ. P. Code § 335.1. Likewise, it appears the EEOC issued Kimber at least one right-to-sue letter for his Section 504 claim, but Kimber did not timely file a lawsuit. (*See* Defs.' RJN Exs. 6, 8-9.) Therefore, Kimber is also time-barred from bringing this claim against Defendants.

Accordingly, Defendants' motion to dismiss this claim is **GRANTED**.

## C. Equitable Tolling, Continuing Violations Doctrine, and Leave to Amend

In his Complaint, Kimber "requests the court allow equitable tolling of the statute of limitations for prior proceedings [sic][.]" (Compl. ¶ 50.) In his opposition, he also urges the Court to apply the continuing violations doctrine to his claims. (Docket No. 44 at pp. 12-14.) After a thorough review of Kimber's Complaint and the judicially noticed documents, the Court finds neither equitable tolling nor application of the continuing violations doctrine is warranted. In particular, the Court notes that Kimber has filed or attempted to file several variations of the same underlying claims with the EEOC, but failed to adhere to the statutory requirements of filing a timely complaint.[11] Moreover, none of his claims are within the applicable statutory period because his claims arise out of events that occurred over ten years prior to the filing of his Complaint. Kimber has not

---

[11] Additionally, a search of the CM/ECF records indicates Kimber has previously filed a similar or related complaint in this District, against several of the current Defendants. *See Kimber v. Mabus, et al.*, Case No. 3:13-cv-00424-JM-WMC, Docket No. 1 (January 2, 2013).

provided any convincing factual basis or case authority to justify application of equitable tolling or the continuing violations doctrine. Therefore, Kimber's request is **DENIED**.

Finally, Kimber's opposition to Defendants' motion further requests leave to amend his Complaint. Although district courts are directed to grant leave to amend liberally, leave to amend may be denied "if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith." *Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532 (9th Cir. 2008). As explained above, each of Kimber's claims is either several years beyond its statute of limitations, or does not contain a private right of action upon which he may sue. Therefore, the Court finds leave to amend would be futile, and **DENIES** leave to amend.

**CONCLUSION**

In sum, for all of the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**, and Kimber's Complaint is **DISMISSED with prejudice**.

    **IT IS SO ORDERED.**

Dated: October 13, 2017

Hon. Roger T. Benitez
United States District Judge

3:16-cv-01472-BEN-AGS